# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 16, 2020

Lyle W. Cayce
Clerk

No. 20-10361
Summary Calendar

Kenda Riney,

*Plaintiff—Appellant*,

*versus*

Lockheed Martin Corporation, *doing business as* Lockheed
Martin Aeronautics Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC 4:19-CV-1006

Before King, Smith, and Wilson, *Circuit Judges.*

Per Curiam:*

Kenda Riney sued Lockheed Martin Aeronautics ("Lockheed"), alleging that Lockheed failed to promote her based on gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. *See* 42

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-10361

U.S.C. § 2000e.  Riney contends that Lockheed's promotion of a male, Mark Wall, instead of her was the result of unlawful gender discrimination. Riney additionally asserts that the failure to promote was retaliation for a gender-based equal pay dispute she initiated against Lockheed in 1999.  The district court granted summary judgment in favor of Lockheed on both claims.  Riney appeals the court's ruling only as to the gender discrimination claim.  We AFFIRM.

## BACKGROUND

Riney has been employed by Lockheed since 1988.  Relevant here, a dispute arose between Riney and Lockheed in 1999, in which Riney contended that she was undercompensated relative to her male peers.  That dispute was resolved when the parties reached a settlement agreement in 2001.  From 2001 through 2017, Riney successfully performed various roles throughout the company.  Beginning in 2012, as opportunities arose, she began interviewing internally for higher positions, without success.

In 2017, Lockheed created a position for its F-35 Program, Vice President of Contracts and Estimating (the "VP position").  The VP position encompassed the duties of Riney's then-current position, eliminating it.[1]

Lockheed interviewed four candidates for the VP position: two men and two women, including Riney.  The interview panel consisted of six male employees.  The four individuals selected to interview were all Lockheed employees chosen based on their annual talent reviews.  One of the interview panelists stated that "[e]ach of the candidates in the room was outstanding," and another noted that simply being asked to interview was a testament to the interviewees' "career with the company and their performance over

---

[1] Riney is still employed by Lockheed, in a new position created specifically for her following Wall's promotion to the VP position.

time." Ultimately, the panel unanimously recommended the promotion of Wall to the VP position. The panel's recommendation was presented to Kenneth Possenriede, Lockheed's Vice President of Finance and Program Management. The decision to select Wall was ultimately Possenriede's decision, and Possenriede agreed with the panel's assessment. But he also briefly conferred with Bruce Tanner, Lockheed's then-CFO, before moving forward with hiring Wall. Tanner was involved in Riney's 1999 dispute with Lockheed; he is the only individual (besides Riney) involved in both that dispute and the present one.

After learning that Wall was promoted to the VP position, Riney initially assumed the selection was based on favoritism due to Wall's employment at the Marietta division of Lockheed. The interview panel consisted entirely of current or previous employees at the Marietta division. Riney never worked at the Marietta facility. Later, Riney clarified that she thought Wall was chosen for both his Marietta ties and because he is male.

At the time of the interviews, both Riney and Wall were long-term Lockheed employees, Directors of Contracts, and had received identical performance reviews in 2015, 2016, and 2017. Riney received better performance reviews than Wall in 2013 and 2014, but Wall scored higher than Riney on his interview performance. The other woman selected to interview, Linda Smith, also scored higher than Riney on the interview portion of the evaluation.

Individual panel members provided several reasons for choosing Wall over Riney. Some attributed the decision to "how he performed in the interview," combined with Wall's experience in "other leadership positions of . . . significant size," leading the panel to believe he was "most capable of scaling into the [VP position]." Others testified that the decision was too holistic to be reduced to a single reason; some said that Riney was too

No. 20-10361

"tactical" and not "strategic" enough for the VP position. No reason given by any panel member alluded to Riney's gender.

Riney sued Lockheed, asserting that failure to promote her to the VP position constituted gender discrimination and retaliation in violation of Title VII. The district court concluded that Riney alleged a prima facie case of gender discrimination, but she failed to establish that there was a genuine issue of material fact as to whether Lockheed's explanation for promoting Wall over her was pretextual. The district court further concluded that Riney failed to establish a prima facie case of retaliation. As a result, the district court granted summary judgment to Lockheed on both claims.

Aggrieved, Riney appeals the district court's ruling on her gender discrimination claim. Specifically, she contends that the district court erred in not finding pretext due to: (1) Lockheed's "varying and shifting reasons" for hiring Wall instead of her, (2) Lockheed's use of subjective criteria to evaluate VP position candidates, and (3) preselection of Wall for the VP position. Riney additionally argues that the district court improperly used a "pretext-plus" standard in evaluating her claim.

## DISCUSSION

We review the district court's grant of summary judgment de novo, "applying the same legal standards as the district court." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 576 (5th Cir. 2020) (quoting *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 823 (5th Cir. 2019)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution would affect the outcome of the case. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). An issue is "genuine" only if "the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* When

reviewing summary judgment decisions, we view the evidence and draw all justifiable inferences in the nonmovant's favor. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). However, mere conclusory allegations are insufficient to defeat a summary judgment motion. *Id.*

Title VII prohibits an employer from discriminating against an employee based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Intentional discrimination may be proved by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). When there is no direct evidence of discrimination, courts apply the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under *McDonnell Douglas*, to establish a prima facie case of discrimination for failure to promote, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position sought, (3) she was not promoted, and (4) the defendant filled the position by someone outside the protected class. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001). Establishing a prima facie case raises an inference of unlawful discrimination. *Id.* The burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for hiring the successful candidate. *Id.* at 297.

If the plaintiff establishes a prima facie case and the defendant articulates a legitimate, nondiscriminatory reason for its decision, the burden shifts back to the plaintiff to establish a genuine issue of material fact as to whether the defendant's explanation is merely pretext for a discriminatory purpose. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown*, 969 F.3d at 578.

In this case, Lockheed concedes that Riney presented a prima facie case of gender discrimination. To counter her prima facie case, Lockheed provided a straightforward rationale for its decision to promote Mark Wall instead of Riney: Wall was a better candidate and more qualified for the VP position. Lockheed's witnesses varied in how they explained this rationale: some grounded the decision upon the requirements and duties of the VP position, while others cited the candidates' interview performance or abilities.

Riney asserts that the varying explanations among Lockheed's witnesses demonstrate that Lockheed's proffered rationale for selecting Wall for the VP position is pretextual. She describes the explanations as "shifting" and "inconsistent." Riney is correct that inconsistent statements can be indicative of pretext. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015). However, the district court determined that Lockheed's panelists' explanations were not inconsistent, but rather became "'more detailed' as the dispute entered an adversarial proceeding." The record supports the district court's conclusion in this regard. The Lockheed witnesses' testimony regarding Lockheed's hiring decision consistently shows that the hiring committee believed Wall was generally a better candidate for the job. Viewing all facts in the light most favorable to Riney, the record nonetheless supports the district court's finding that Riney failed to establish a genuine issue of material fact as to whether Lockheed's reason for hiring Wall was pretextual.

Riney also alleges that Wall was "preselected" for the position even before interviews began, and that this preselection substantiates the pretext of Lockheed's proffered hiring rationale. In support, Riney introduced organizational charts in which Wall's name already appeared under various positions for the F-35 program. But even if this evidence demonstrated Wall's preselection for the VP position, this court has held that

No. 20-10361

"[p]reselection, in and of itself, does not establish pretext unless the preselection was motivated by discriminatory animus." *Hiner v. McHugh*, 546 F. App'x 401, 407 (5th Cir. 2013). Riney offered no evidence suggesting that Wall's alleged preselection was so motivated. This rationale thus fails to salvage Riney's claim.

Riney further posits that Lockheed's explanation is pretextual due to the subjective criteria used in evaluating the candidates considered for the VP position. However, nothing in the record indicates that the decision to promote Wall over Riney was grounded on subjective criteria. Rather, the interview panel considered an objective points system when evaluating candidates' interviews, and past annual performance reviews were used to support the panel's decision making. Further, the mere fact that an employer uses subjective criteria is not sufficient evidence of pretext. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003). Riney's contention therefore lacks merit.

Riney argues that even if each of these explanations, standing alone, does not demonstrate pretext, when considered together, they are sufficient to create a genuine issue of material fact as to pretext. We disagree. None of Riney's contentions are supported by evidence that suggests that Lockheed's decision to promote Wall over Riney was pretextual.

Riney latches on to a single statement made by the district court in its order granting summary judgment "that Riney has offered some evidence of pretext—namely, the different explanations for why she did not get the promotion." But "proof of an employer's reasons becoming more detailed as the dispute moves beyond the initial notice to an employee and enters into adversarial proceedings is insufficient to create a jury question regarding pretext absent an actual inconsistency." *Minnis v. Board of Sup'rs of Louisiana State University*, 620 F. App'x 215, 220 (5th Cir. 2015). The

district court ultimately concluded that Lockheed's "explanations [were] not inconsistent," and that Riney's evidence failed to establish pretext or any discriminatory intent. *See Churchill v. Texas Dep't of Criminal Justice*, 539 F. App'x 315, 320 (5th Cir. 2013) (affirming the district court's grant of summary judgment and explaining that the ultimate issue in Title VII cases is whether an employer is "motivated by discrimination"). We discern no error in the district court's conclusions.

Riney finally contends that the district court erroneously employed a "pretext plus" standard. Citing *Bostock v. Clayton County*, 140 S.Ct. 1731, 1739 (2020), Riney argues that even if gender discrimination was only one of many but-for causes of Lockheed's decision not to promote her, Lockheed should be held liable for violating Title VII. But *Bostock* does not save Riney's claim. The district court found that Riney did not establish gender discrimination as even one but-for cause of Lockheed's failure to promote her. This finding is supported by the record.

## CONCLUSION

Riney failed to produce evidence sufficient to create a genuine issue of material fact that Lockheed failed to promote her based on gender discrimination. Accordingly, the judgment of the district court is AFFIRMED.